LIPSON NEILSON P.C.
JOSEPH P. GARIN, ESQ.
Nevada Bar No. 6653
JONATHAN K. WONG, ESQ.
Nevada Bar No. 13621
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 - Telephone
(702) 382-1512 - Facsimile
jgarin@lipsonneilson.com
jwong@lipsonneilson.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DR. F. VICTOR RUECKL, an individual, | CASE NO. |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| INMODE LTD., a foreign limited liability corporation; DOES 1 – 10, INCLUSIVE; AND ROE CORPORATIONS 11-20, INCLUSIVE, | |
| Defendants. | |

COMES NOW Plaintiff, Dr. F. Victor Rueckl ("Dr. Rueckl"), by and through his attorneys, LIPSON NEILSON P.C., and for his causes of action against Defendant INMODE LTD., alleges as follows:

## PARTIES AND JURISDICTION

1. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Dr. Rueckl is a citizen of Nevada, and Defendant InMode Ltd. is neither incorporated nor maintains its principal place of business in Nevada. Pursuant to FRCP 38, Plaintiff demands trial by jury.

2. Dr. F. Victor Rueckl is an individual who is and was a resident of the State of Nevada at all times relevant hereto.

///

3. Defendant InMode Ltd. ("InMode") is and was at all times relevant hereto a foreign corporation incorporated in Israel, and upon information and belief, maintains its principal place of business in Lake Forest, California.

4. Dr. Rueckl is a board-certified dermatologist and skin cancer surgeon. He has been licensed in Nevada since 1981. In addition to maintaining a private practice in Las Vegas, Nevada since 2005, Dr. Rueckl is a national trainer for various injectables and laser manufacturers. In that capacity, he trains other physicians throughout the country. He currently maintains the only SkinCeuticals Flagship Advanced Clinical Spa in Nevada.

5. InMode is a provider of surgical aesthetic and medical treatment solutions. It incorporated in Israel in January 2008 under the name Invasix Ltd. The corporate name was changed to InMode Ltd. in November 2017.

6. The amount-in-controversy requirement is met. Dr. Rueckl was promised 5,000 stock options in InMode in exchange for providing certain services to InMode. Thereafter, he was promised another 5,000 stock options to serve as a witness in a lawsuit filed against InMode. InMode failed to honor its promises to Dr. Rueckl despite having received the benefit of Dr. Rueckl's services. Dr. Rueckl seeks monetary damages based on the worth of the options Defendant now refuses to honor, which presently hold a value of in excess of $75,000.00.

7. Venue is appropriate under 28 U.S.C. §1391(b)(2), because a substantial part of the events giving rise to Dr. Rueckl's claims occurred in Nevada.

## GENERAL ALLEGATIONS

8. Sometime in late 2016, Dr. Rueckl was contacted by Brian Lodwig ("Lodwig"), president of InMode, while facilitating a workshop for InMode in Las Vegas.

9. At all times here, Lodwig was a duly authorized representative of InMode and / or had the apparent authority to negotiate with Dr. Rueckl and Dr. Rueckl reasonably relied on Lodwig's actual or apparent authority to transact business of InMode.

10. Lodwig informed Dr. Rueckl that he had been authorized by Moshe Mizrahy, CEO of InMode, to extend 5,000 InMode stock options to Dr. Rueckl.

11. Lodwig advised that Dr. Rueckl did not need any supporting documentation for this, and advised Dr. Rueckl that he was "on the list" and that "Moshe has directed this." Dr. Rueckl reasonably relied on these statements and Lodwig's actual or apparent authority to transact business of InMode.

12. Based on this compensation arrangement proposed by Lodwig, Dr. Rueckl agreed to provide – and did in fact provide – numerous services for InMode, including but not limited to:

a. Speaking at or conducting training sessions in LA, Denver, Salt Lake City, Las Vegas, Seattle, Washington DC, and other locations. Some of these sessions were 2-3 hour dinner sessions, and others were half-day workshops. These sessions introduced InMode products to many physicians.

b. Handling phone calls daily from prospective purchasers regarding InMode's technologies.

c. Training over 50 physicians and their staff on InMode treatments, including Fractora, Lumecca, and Forma, and how to profitably operate a spa. As part of these trainings, Dr. Rueckl picked up people from the airport, took them out to dinner, and generally acted as their host during their time in Las Vegas.

d. Coordinating with other InMode employees to make a handout on how customers can pay for InMode's Fractora machine in 90 days.

13. Dr. Rueckl received no other compensation for any of the foregoing services, as it was represented and agreed, and he understood and accepted, that he was to be compensated with the stock options.

14. In or around May 2017, InMode, through Lodwig, sought to retain Dr. Rueckl as an expert witness in the case *Syneron Medical Ltd. V. Invasix, Inc. et al*, Case No. 8:16-cv-00143-DOC-KES (the "Candela Lawsuit"). Rather than receiving monetary compensation for his services in this regard, Dr. Rueckl was promised

///

another 5,000 stock options. Dr. Rueckl again asked Lodwig about any necessary paperwork, and he was assured that everything was taken care of.

15. Pursuant to this arrangement, Dr. Rueckl put in extensive time and effort in the Candela Lawsuit, including hours of telephone calls and meetings with InMode's attorneys, including several in-person meetings, and a deposition.

16. Dr. Rueckl received no monetary compensation for his work in the Candela Lawsuit, as he agreed and understood that he was to be compensated with stock options.

17. On or around August 8, 2019, InMode made its initial public offering.

18. On or around September 12, 2019, Dr. Rueckl sent an e-mail to Mizrahy reminding him of the options owed to Dr. Rueckl and asking what information and documents Mizrahy needed to effectuate the transfer of these options to Dr. Rueckl.

19. On or around September 17, 2019, Mizrahy sent a reply e-mail to Dr. Rueckl advising that there was no indication in the InMode list of options holders that Dr. Rueckl received options, and requested he send over the option document.

20. On or around September 19, 2019, Dr. Rueckl replied to Mizrahy's e-mail and informed him that he was advised by Ludwig that he was "on the list," that "Moshe directed this," and that no paperwork was needed.

21. That same day, Mizrahy replied, advising that Lodwig never discussed the matter with him, that he could find nothing in his e-mails regarding this arrangement, and that he was "totally not aware of it." He further advised that Lodwig did not have the authority to authorize any options allocations, and that only the Board of Directors may do so.

22. On October 10, 2019, Dr. Rueckl sent a reply e-mail to Mizrahy, reminding Mizrahy of the work Dr. Rueckl had done for InMode over the years and reiterating his request that InMode honor its promise to compensate Dr. Rueckl with stock options.

///

23. On October 12, 2019, Mizrahy e-mailed Dr. Rueckl, stating that this predicament was Lodwig's fault and suggesting that Dr. Rueckl ask Lodwig to transfer his options to Dr. Rueckl.

24. On October 23, 2019, Dr. Rueckl sent a reply e-mail to Mizrahy, advising that his response was unacceptable, and that it did not make sense to ask Lodwig for his options given that the options were part of a business payment owed to Rueckl from InMode, not Lodwig individually.

25. As of the date of this Complaint, Dr. Rueckl has not received the stock options he was promised, nor has he received any indication from Mizrahy or other InMode personnel that InMode intends to fulfill such promise.

## FIRST CAUSE OF ACTION

### (Negligent Misrepresentation)

26. Dr. Rueckl realleges and incorporates each and every one of the allegations contained in the preceding paragraphs as if set forth fully herein.

27. Defendant, in the course of action in which it had a pecuniary interest, failed to exercise reasonable care or competence in obtaining or communicating information to Dr. Rueckl as set forth above.

28. Such information included, without limitation, that Dr. Rueckl was to receive 5,000 stock options in InMode in exchange for his services, that no documentation of this arrangement was needed, that Dr. Rueckl was "on the list" as an options-holder in InMode, and that Dr. Rueckl was to receive an additional 5,000 stock options in InMode for his work in the Candela Lawsuit.

29. Dr. Rueckl justifiably relied on this information in providing services for InMode.

30. As a direct and proximate result of Defendant's conduct, Dr. Rueckl has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000).

///

///

31. Dr. Rueckl has been required to retain the services of Lipson Neilson P.C. to prosecute this action and is entitled to recover an award of reasonable attorneys' fees and costs incurred herein.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

32. Dr. Rueckl realleges and incorporates each and every one of the allegations contained in the preceding paragraphs as if set forth fully herein.

33. Defendant and Dr. Rueckl entered into enforceable agreements wherein Dr. Rueckl was to be compensated with InMode stock options in exchange for his services.

34. Defendant failed to perform under such agreements as set forth above.

35. Dr. Rueckl performed, or was excused from performance, under such agreements.

36. As a direct and proximate result of Defendant's conduct, Dr. Rueckl has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000).

37. Dr. Rueckl has been required to retain the services of Lipson Neilson P.C. to prosecute this action and is entitled to recover an award of reasonable attorneys' fees and costs incurred herein.

## THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

38. Dr. Rueckl realleges and incorporates each and every one of the allegations contained in the preceding paragraphs as if set forth fully herein.

39. Defendant and Dr. Rueckl entered into valid and enforceable contracts as set forth above.

40. Under applicable law, the agreements contained implied covenants of good faith and fair dealing among all parties.

///
///

41. Defendant's conduct, as set forth above, breached that duty of good faith and fair dealing by performing in a manner that was unfaithful to the purpose of the agreements.

42. As a direct and proximate result of Defendant's conduct, Dr. Rueckl has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000).

43. Dr. Rueckl has been required to retain the services of Lipson Neilson P.C. to prosecute this action and is entitled to recover an award of reasonable attorneys' fees and costs incurred herein.

## FOURTH CAUSE OF ACTION

### (Promissory Estoppel)

44. Dr. Rueckl realleges and incorporates each and every one of the allegations contained in the preceding paragraphs as if set forth fully herein.

45. Defendant, through Lodwig, unequivocally represented to Dr. Rueckl that it would compensate Dr. Rueckl with 5,000 stock options in InMode for his services to InMode, and another 5,000 stock options in InMode for work performed on behalf of InMode in the Candela Lawsuit.

46. Lodwig was at all times acting as Defendant's duly authorized agent and/or had apparent authority to transact business on Defendant's behalf with Dr. Rueckl.

47. Dr. Rueckl reasonably relied upon Defendant's representations and promises in belief that he would in fact receive such compensation for his services, and as such did not request monetary compensation for his services, all to his detriment.

48. Defendant failed to compensate Dr. Rueckl with the promised InMode stock options.

49. Dr. Rueckl is entitled under principles of promissory estoppel to be compensated by Defendant with the entire amount of stock options promised and owed to him by Defendant.

///

50. As a direct and proximate result of Defendant's conduct, Dr. Rueckl has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000).

51. Dr. Rueckl has been required to retain the services of Lipson Neilson P.C. to prosecute this action and is entitled to recover an award of reasonable attorneys' fees and costs incurred herein.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

52. Dr. Rueckl realleges and incorporates each and every one of the allegations contained in the preceding paragraphs as if set forth fully herein.

53. As set forth above, Dr. Rueckl provided extensive services to Defendant, all of which he received no monetary compensation for.

54. Dr. Rueckl provided such services based on Defendant's promises that he would be compensated with InMode stock options, which Defendant ultimately reneged on after receiving the benefit of Dr. Rueckl's services.

55. In light of Defendant's conduct set forth herein, Dr. Rueckl should be compensated with the stock options Defendant promised him in the interests of equity.

56. As a direct and proximate result of Defendant's conduct, Dr. Rueckl has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000).

57. Dr. Rueckl has been required to retain the services of Lipson Neilson P.C. to prosecute this action and is entitled to recover an award of reasonable attorneys' fees and costs incurred herein.

## SIXTH CAUSE OF ACTION

### (Fraud)

58. Dr. Rueckl realleges and incorporates each and every one of the allegations contained in the preceding paragraphs as if set forth fully herein.

59. Defendant, through Lodwig, represented to Dr. Rueckl in late 2016 that, in exchange for his services to InMode, he would be compensated with 5,000 stock options in InMode. Defendant advised Dr. Rueckl that no documentation as to this

arrangement was necessary, that he was "on the list," and that "Moshe has directed this."

60. In May 2017, Defendant, through Lodwig, agreed to compensate Dr. Rueckl with an additional 5,000 stock options in exchange for Dr. Rueckl's assistance on the Candela Lawsuit. Dr. Rueckl was again advised that no documentation was necessary and that everything was taken care of for the prior 5,000 stock options and the new 5,000 in stock options.

61. Defendant knew that these representations were false, as Defendant itself admits that only the Board of Directors had the authority to approve options allocations.

62. Defendant intended for Dr. Rueckl to rely on these representations.

63. Dr. Rueckl reasonably relied on these representations, as he performed the services for Plaintiff for which he was to receive stock options as compensation.

64. Dr. Rueckl's reliance was to his detriment, as he received no other compensation for the time, effort, and resources he spent performing services for Plaintiff.

65. As a result of Plaintiff's fraud, Dr. Rueckl has been damaged in an amount in excess of seventy-five thousand dollars ($75,000) plus punitive damages as permitted by law.

66. Dr. Rueckl has been required to retain the services of Lipson Neilson P.C. to prosecute this action and is entitled to recover an award of reasonable attorneys' fees and costs incurred herein.

///

///

///

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief in favor of Plaintiff and against Defendant as follows:

1. For damages in an amount in excess of seventy-five thousand dollars ($75,000);
2. For punitive damages and permitted by NRS 41 and as otherwise allowed by law;
3. For pre-and post-judgment interest;
4. For all attorneys' fees and costs of suit; and
5. For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Dr. Rueckl demands trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this 19th day of December, 2019.

LIPSON NEILSON P.C.

By: _____
JOSEPH P. GARIN, ESQ.
Nevada Bar No. 6653
JONATHAN K. WONG, ESQ.
Nevada Bar No. 13621
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144

*Attorneys for Plaintiff*