UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| VICTOR RUECKL, | Case No. 2:19-cv-02186-KJD-NJK |
| Plaintiff, | **ORDER** |
| v. | |
| INMODE, LTD., | |
| Defendant. | |

Presently before the Court is Defendant InMode Ltd.'s Motion to Dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted (ECF No. 10). Plaintiff, Victor Rueckl filed a response in opposition (ECF No. 17), to which InMode replied (ECF No. 26). Also before the court is Rueckl's Motion for Limited Jurisdictional Discovery (ECF No. 38).

**I. Background**

In 2014, Brian Lodwig, the president of Invasix Inc., approached Rueckl at a marketing dinner in Colorado and asked Rueckl if he would be interested marketing and selling InMode devices and technology. Pl.'s Resp. 4, ECF No 17. Rueckl is a Las Vegas dermatologist and skin cancer surgeon and has been licensed in Nevada since 1981. Compl. ¶ 4, ECF No. 1. InMode is a provider of surgical and medical treatment solutions and is incorporated under the laws of Israel with its principal place of business in Israel. Mot. to Dismiss 6, ECF No. 10. InMode was incorporated in 2008 under the name Invasix Ltd. and changed its name to InMode Ltd. in 2017, although it was using the InMode name as early as 2014. Compl. ¶ 5, ECF No. 1.; Pl.'s Resp. 2, ECF No 17. InMode provides medical equipment to Nevada physicians and lists all Nevada medical professionals who provide their services on their website. Id. at 10. Invasix Inc., a subsidiary of InMode was incorporated under the laws of Delaware in 2008 with its principal

place of business in Lake Forest, California. Mot. to Dismiss 8, ECF No. 10.

Rueckl agreed to market and sell InMode technologies for compensation in stock options. Pl.'s Resp. 4, ECF No 17. Lodwig advised Rueckl that he would discuss the mode of compensation with Moshe Mizrahy, CEO of InMode. Id. Lodwig introduced Rueckl to Mizrahy in 2013 where Mizrahy represented Lodwig's position as president of InMode. Id. at 8. In 2016, Lodwig orally informed Rueckl, who was promoting InMode at a Las Vegas event, that Mizrahy agreed to compensate Rueckl with 5,000 stock options, with a strike price of $1.00, in exchange for marketing and promoting InMode products. Id. at 4. No other terms were specified. Mot. to Dismiss 8, ECF No. 10. Rueckl inquired about the need for written documentation but Lodwig assured him there was no need because Rueckl was "on the list" and that "Moshe has directed this." Pl.'s Resp. 4, ECF No 17.

Based on this alleged compensation agreement, Rueckl agreed to provide – and did in fact provide – several services for InMode including: speaking and conducting InMode product training sessions in several cities including Las Vegas; and training, in Las Vegas, over fifty doctors and their staff on the use of InMode treatments. Id. at 5. Rueckl received no other form of compensation for his services. Id.

In or around May 2017, InMode, through Lodwig, sought to retain Rueckl's assistance in the case Syneron Medical Ltd. v. Invasix, Inc. et al. Rueckl alleges that he and Lodwig orally agreed to compensation in the form of 5,000 stock options, with a strike price of $1.00, in exchange for his expertise. Id. Pursuant to this arrangement, Rueckl put in extensive time meeting with InMode's attorneys, including several in-person meetings, a review of facts, and a deposition. Id. Again, Rueckl received no other form of compensation for his services. Id.

On September 12, 2019, a month after InMode made its initial public offering, Rueckl emailed Mizrahy asking what information was needed to effectuate the transfer of his options. Id. Mizrahy responded that Rueckl was not on InMode's list of option holders. Id. After Rueckl responded that Lodwig advised him that he was on the list, Mizrahy stated that Lodwig, who was not – and never was – employed by InMode, never discussed the matter with him, and that only the Board of Directors had the authority to agree to compensation in the form of options. Id. at 6.

On December 19, 2019, Rueckl initiated this lawsuit against InMode and alleged six causes of action: (1) negligent misrepresentation; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) promissory estoppel; (5) unjust enrichment; and (6) fraud. Compl., ECF No. 1.

On February 7, 2020, InMode moved to dismiss. Mot. to Dismiss, ECF No. 10. InMode argued they did not have the minimum contacts necessary for personal jurisdiction, and additionally claimed that jurisdiction cannot be established against them merely by the contacts of their subsidiary, Invasix Inc. Mot. to Dismiss 9–12, ECF No. 10; Def.'s Reply 4–8, ECF No. 26. InMode also argued that Rueckl failed to state valid claims Mot. to Dismiss 12–17, ECF No. 10. In his response, Rueckl requested leave to amend should the court grant InMode's motion. Additionally, on June 11, 2020, Rueckl moved for limited jurisdictional discovery.

## II. Personal Jurisdiction

### A. Fed. R. Civ. P. 12(b)(2) Legal Standard

A court may dismiss a complaint for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of establishing personal jurisdiction over each defendant. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, (2011). When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) (citing Pacific Atlantic Trading Co. v. M/V Main Exp., 758 F.2d 1325, 1327 (9th Cir. 1985)). That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant. Data Disc, Inc. v. Systems Technology Assos., 557 F.2d 1280, 1285 (9th Cir. 1977). The plaintiff's allegations "may not be merely conclusory, but must assert particular jurisdictional facts which establish the necessary ties between the defendant and the forum state." Pocahontas First Corp. v. Venture Planning Group, Inc., 572 F. Supp. 503, 506 (D. Nev. 1983). Moreover, a court resolves conflicts in the parties' affidavits in favor of the non-moving party. Holland Am. Line Inc. v. Wärtsilä N. Am., Inc., 485 F.3d 450, 457 n. 5 (9th Cir. 2007). However, for purposes of personal jurisdiction, a court "may not assume the truth of allegations

1  in a pleading which are contradicted by affidavit." Data Disc, Inc., 557 F.2d at 1284.

2  To establish personal jurisdiction, the plaintiff must show that the forum's long-arm
3  statute grants personal jurisdiction over the out-of-state defendant and that the exercise of
4  jurisdiction does not violate federal constitutional principles of due process. Haisten v. Grass
5  Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir. 1986). The Nevada long-
6  arm statute, NRS 14.065, provides that a court within Nevada can exercise personal jurisdiction
7  over a defendant to the full extent that the United States Constitution permits. Baker v. Eighth
8  Judicial Dist. Court, 116 Nev. 527, 531 (2000). In turn, the Due Process Clause of the United
9  States Constitution allows a court to exercise personal jurisdiction over a defendant only when
10 the defendant has sufficient "minimum contacts" with a forum state so that the exercise of
11 jurisdiction does not offend "traditional notions of fair play and substantial justice." Int'l Shoe
12 Co. v. Washington, 326 U.S. 310, 316 (1945).

### B. Analysis

As a preliminary matter, the Court addresses InMode's declaration that Lodwig, the president of Invasix Inc., was never an employee, officer, or director of InMode. While this may be true, it does not contradict Rueckl's claim that InMode and Mizrahy held Lodwig out as their president and representative. As such, the Court accepts Rueckl's version of the uncontradicted facts as true. See Data Disc, Inc., 557 F.2d at 1284.

Accordingly, the Court disregards InMode's Alter Ego Theory argument, made in response to Rueckl's opposition to the Motion to Dismiss. Contrary to InMode's insinuation, Rueckl is not attempting to haul InMode to Nevada under an Alter Ego Theory, based on their subsidiary's minimum contacts. Rather, Rueckl is attempting to assert jurisdiction based on InMode's contacts for causes of action that arise out of an agency theory of apparent authority. See Great Am. Ins. Co. v. Gen. Builders, Inc., 934 P.2d 257, 261 (Nev. 1997) (a party claiming an agent had apparent authority must show: "(1) that he subjectively believed that the agent had authority to act for the principal and (2) that his subjective belief in the agent's authority was objectively reasonable"); see also N. Nev. Mobile Home Brokers v. Penrod, 96 Nev. 394, 397 (1980) (asserting that existence or non-existence of an agency relationship is a question of fact

for the jury). Therefore, if InMode has sufficient minimum contacts with Nevada so that the exercise of jurisdiction is not unreasonable, personal jurisdiction is proper. Because Rueckl is not alleging that general jurisdiction exists, the Court will analyze whether specific jurisdiction is appropriate

### 1. Specific Jurisdiction

The Court applies a three-prong test to determine whether a defendant's contacts with the forum are sufficient to confer specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of proving the first two prongs of the test. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011). If the plaintiff succeeds, the burden shifts to the defendant to make a "compelling case" that jurisdiction would be unreasonable. Id.

The "purposeful availment analysis is most often used in suits sounding in contract." Id. When the plaintiff brings both contract and tort claims, the plaintiff must only demonstrate personal jurisdiction on one claim because the Court may exercise pendent jurisdiction over the additional claims so long as they arise out of a common nucleus of operative fact. See Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir. 2004). Accordingly, the Court will have jurisdiction if InMode purposefully availed itself of the privileges of conducting business in Nevada.

### i. Purposeful Availment

The "purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir.1986). A defendant has purposefully availed itself of a forum when it exhibits some kind of affirmative conduct allowing or

- 5 -

1    promoting business transactions within the forum state. Id.; see also Ballard v. Savage, 65 F.3d
2    1495, 1498 (9th Cir. 1995) (stating that a party purposely avails itself of a forum when it "has
3    taken deliberate action within the forum state or ... has created continuing obligations to forum
4    residents."). However, a contract between a defendant and a resident of the forum – without
5    more – is insufficient to confer personal jurisdiction. Boschetto v. Hansing, 539 F.3d 1011, 1017
6    (9th Cir. 2008).

7    Although InMode's alleged contract with a Nevada resident, itself, is insufficient to
8    confer personal jurisdiction, InMode allowed and promoted business transactions in the forum
9    state. While InMode claims it does not specifically target Nevada in its business ventures, it does
10   sell medical equipment to Nevada doctors for use on Nevada residents. Mot. to Dismiss 8, ECF
11   No. 10; Pl.'s Resp. 2, ECF No 17. Their website lists many Nevada medical offices which offer
12   InMode products. Rueckl also provided several InMode product trainings, on behalf of InMode,
13   in Nevada. Accordingly, the Court finds that InMode availed itself of the privileges and benefits
14   of doing business in Nevada.

### ii. Forum-Related Activities

16   The second prong of the test is whether plaintiff's claim arises out of activity conducted
17   in the forum state. Schwarzenegger, 374 F.3d at 802. The mere existence of a contract between
18   the defendant and a resident of the forum state is not enough. Roth v. Garcia Marquez, 942 F.2d
19   617, 621 (9th Cir. 1991). Rather, the Court examines the "continuing relationships and
20   obligations with citizens of the [forum]." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473,
21   105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The Court also considers the circumstances
22   surrounding formation of the contract including "prior negotiations and contemplated future
23   consequences, along with the terms of the contract and the parties' actual course of dealing." Id.
24   at 479.

25   Rueckl's declaration claims that InMode's connections to Nevada are more significant
26   than just the alleged agreement. InMode held events in Las Vegas where it promoted its
27   products, and which Rueckl participated in. Rueckl held training sessions in Las Vegas where he
28   introduced InMode products in exchange for the stock options at issue as alleged compensation.

Per Rueckl, InMode sought his services to promote its products at conferences and workshops in Las Vegas. InMode's contacts extended beyond a mere contact with Nevada residents, and accordingly, Rueckl's claims arise out of InMode's activities in Nevada.

### iii. Reasonableness

The final prong of the analysis shifts the burden to InMode to present a "compelling case" that jurisdiction in Nevada would be unreasonable. Schwarzenegger, 374 F.3d at 802. This is a high bar because there is a "presumption of reasonableness" once a plaintiff has satisfied the first two elements of the test. See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986). The Court looks to seven factors to determine whether personal jurisdiction is reasonable:

> (1) the extent of the defendant's purposeful interjection into the affairs of the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004). InMode failed to present any case that jurisdiction would be unreasonable, and, additionally, the factors do not overwhelmingly favor InMode. Therefore, jurisdiction is reasonable.

Factors one, four, five, six, and seven favors Rueckl and jurisdiction. InMode interjected itself into the forum when it sought to market its products in Nevada and allegedly contracted with a Nevada doctor to promote its products. Additionally, Nevada has a "substantial interest" in adjudicating the dispute of its residents. See CE Distribution, 380 F.3d at 1112 ("The forum state has a substantial interest in adjudicating the dispute of one of its residents who alleges injury due to the tortious conduct of another."). Rueckl alleges both breach of contract and tort claims against InMode. Thus, Nevada has an interest in adjudicating this case. Furthermore, because the dispute revolves around services that were largely performed in Nevada, many of the witnesses would be located in Nevada which may make Nevada a more efficient forum. If jurisdiction is denied, the alternative forum would be Israel, and, although "not of paramount importance," the plaintiff's decision to litigate in its home forum is "obviously most convenient."

Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1133 (9th Cir. 2003).

While factors two and three may lean in favor of InMode, they failed to present a compelling, or even non-compelling, case for why jurisdiction in Nevada is unreasonable. Accordingly, the Court finds that personal jurisdiction over InMode in Nevada is reasonable and denies InMode's motion to dismiss for lack of personal jurisdiction.

### III. A Claim Upon Which Relief May be Granted

#### A. Fed. R. Civ. P. 12(b)(6) Legal Standard

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. See N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). However, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without

converting the motion to dismiss into a motion for summary judgment. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." Mack v. S. Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside the pleadings, the motion to dismiss is treated as a motion for summary judgment, and all parties are given the opportunity to present all material pertinent to the motion. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001); Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant ... undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment ...." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. See DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

**B. Analysis**

**1. Breach of Contract (Claim 2)**

To state a claim for breach of contract in Nevada, a Plaintiff must demonstrate (1) the existence of a valid contract, (2) that plaintiff performed or was excused from performance, (3) that the defendant breached, and (4) that the plaintiff sustained damages. See Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000). "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." May v. Anderson, 119 P.3d 1254, 1257 (Nev. 2005). However, "contracts made in contravention of the law do not create a right of action." Vincent v. Santa Cruz, 647 P.2d 379, 381 (Nev. 1982).

While Nevada does not require a written agreement to enforce the purchase or sale of securities, the sale or purchase of stock options must at least be memorialized in writing. N.R.S. § 78.200 (2018); see also N.R.S. 104.8113 (2015) ("A contract or modification of a contract for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party against whom enforcement is sought."). All relevant terms of the sale of

stock options must be "stated in the articles of incorporation or in a resolution or resolutions adopted by the board of directors." N.R.S. § 78.200. If a stock option agreement fails to satisfy the statutory requirements, any breach of contract claim is barred by law. See Neuhaus v. Sulphco, Inc., 2008 WL 5509796, at *1 (Nev. Dist. Ct. Nov. 10, 2008) (ruling that a breach of contract claim was barred as a matter of law when only two of the three directors signed the stock option agreement because N.R.S. 78.200 required the signatures of all board members).

Regardless of Rueckl's assertion that the agreement had all the necessary material terms of a valid contract, he never contested that this was in fact an oral agreement. The agreement's terms were never alleged to be stated in InMode's articles of incorporation or in any resolution adopted by the board of directors. Therefore, Rueckl's breach of contract claim is barred as a matter of law. See Neuhaus, 2008 WL 5509796, at *1. Accordingly, Rueckl has failed to state a plausible breach of contract claim and the Court grants the Motion to Dismiss this claim. Because the deficiencies of this claim cannot be cured by amendment, dismissal of this cause of action is with prejudice.

**2. Breach of the Implied Covenants of Good Faith and Fair Dealing (Claim 3)**

Nevada law implies a covenant of good faith and fair dealing in every contract. Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 922-23 (1991). To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied. See Perry v. Jordan, 900 P.2d 335, 338 (Nev. 1995) (citing Hilton Hotels, 808 P.2d at 922–23 (Nev. 1991)).

Generally, a breach of the implied covenants is a contract-based claim. Hilton Hotels, 808 P.2d at 923. However, a breach of the implied covenants can also give rise to tort liability when there is a special relationship between the contracting parties. Id. (stating that a tort action for an implied covenants claim requires a special element of reliance or fiduciary duty). However, Rueckl's did not allege a tortious breach of the covenant, rather a contractual one. See Pl.'s Resp. 17, ECF No 17.

A contractual breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." Hilton Hotels, 808 P.2d at 923–24. This cause of action is different from one for breach of contract because it requires literal compliance with the terms of the contract. See Kennedy v. Carriage Cemetery Servs., Inc., 727 F. Supp. 2d 925, 931 (D. Nev. 2010). Damages under a contractual breach are limited to regular contract damages. Mundy v. Household Fin. Corp., 885 F.2d 542, 544 (9th Cir. 1989). Accordingly, if a plaintiff is not entitled to contract-based damages, he is therefore not entitled to any damages for a contractual breach of the implied covenant. See Shaw v. CitiMortgage, Inc., 201 F. Supp. 3d 1222, 1254 (D. Nev. 2016).

Rueckl never formed a valid contract with InMode. Supra § III(B)(1). Rueckl's breach of contract claim is barred as a matter of law, and he is, therefore, not entitled to contract-based damages. Similarly, InMode could not have fully complied with terms of a non-existent contract. Because there is no contract, Rueckl has no available claim for a contractual breach of implied covenants of good faith and fair dealing. Accordingly, Rueckl failed to state a plausible claim for a breach of the implied covenant and the Court grants the Motion to Dismiss this claim. Because the deficiencies of this claim cannot be cured by amendment, dismissal of this cause of action is with prejudice.

### 3. Unjust Enrichment (Claim 5)

Under Nevada law, unjust enrichment is an equitable doctrine that allows recovery of damages "whenever a person has and retains a benefit which in equity and good conscience belongs to another." Unionamerica Mortg. & Equity Trust v. McDonald, 626 P.2d 1272, 1273 (Nev. 1981). To state an unjust enrichment claim, a plaintiff must plead and prove three elements:
> (1) a benefit conferred on the defendant by the plaintiff;
> (2) appreciation by the defendant of such benefit; and
> (3) an acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.

Takiguchi v. MRI Int'l, Inc., 47 F. Supp. 3d 1100, 1119 (D. Nev. 2014) (citing Unionamerica

Mortg. & Equity Trust, 626 P.2d at 1273). [B]enefit" in the unjust enrichment context can include "services beneficial to or at the request of the other," and is not confined to retention of money or property. See Certified Fire Prot. Inc. v. Precision Constr., 283 P.3d 250, 257 (Nev. 2012) (citing Restatement of Restitution § 1 cmt. b (1937)). However, where there is an express contract, an unjust enrichment claim is unavailable. Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975, 942 P.2d 182, 187 (Nev. 1997) (finding that the existence of an express, written agreement bars an unjust enrichment claim because there can be no implied agreement).

Because there was no express contract between Rueckl and InMode, an unjust enrichment claim is available. However, InMode claims that Rueckl failed to allege any benefit conferred onto InMode. InMode did not contest Rueckl's claim that he promoted InModes products and services. Rather, InMode argued that Rueckl "only vaguely mentions ephemeral services" and never indicated what benefit InMode received. Regarding Rueckl's expert testimony, another uncontested allegation, InMode claims that Rueckl had a duty to truthfully testify during his deposition and therefore InMode could not have retained a "benefit". However, these arguments have no merit.

Rueckl alleged he provided several services for InMode including: speaking and conducting InMode product training sessions in several cities including Las Vegas; and training, in Las Vegas, over fifty doctors and their staff on the use of InMode treatments. Although Rueckl does not allege a specific monetary benefit, his services could have been beneficial to InMode. See Certified Fire Prot. Inc., 283 P.3d at 257. Additionally, whether these services were or were not "ephemeral" is irrelevant to an unjust enrichment analysis. Rueckl adequately plead that InMode was unjustly enriched by his promotional services.

Additionally, Rueckl properly plead that InMode was unjustly enriched by his services as an expert witness. Expert witnesses are routinely retained by parties to a lawsuit and are paid for their services as they convey a benefit onto the retaining party. See, e.g., Logan v. Abe, 350 P.3d 1139, 1143 (Nev. 2015). Rueckl claims he was retained by InMode for the "Candella" lawsuit, and put in extensive time meeting with InMode's attorneys, including several in-person

- 12 -

1 meetings, a review of facts, and a deposition. Accordingly, the Court finds that Rueckl has
2 adequately alleged that InMode was unjustly enriched by his promotion of InMode's products
3 and his services as an expert witness.

### 4. Promissory Estoppel (Claim 4)

To establish a claim for promissory estoppel a plaintiff must allege: (1) defendant was apprised of the true facts; (2) defendant intended that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) plaintiff was ignorant of the true state of facts; and (4) plaintiff has relied to his detriment on the conduct of the party to be estopped. Pink v. Busch, 691 P.2d 456, 459-60 (Nev. 1984). "In general, the party claiming estoppel must specifically plead all facts relied on to establish its elements." Nevada Nat. Bank v. Huff, 582 P.2d 364, 371 (Nev. 1978).

A promise giving rise to the application of the doctrine of promissory estoppel must be "clear and unambiguous" in its terms. Hubel v. BAC Home Loans Servicing, LP, No. 2:10–CV–1476, 2010 WL 4983456, at *3 (D. Nev. Dec. 10, 2010). For the court to recognize a promise, the promise must be definite enough so that the court can "determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." Navarro v. BAC Home Loans LLC, No. 2:11–CV–1557, 2011 WL 6012547, at *2 (D. Nev. Dec. 1, 2011) (citing Ladas v. California State Automobile Ass'n, 19 Cal. App. 4th 761, 770 (1993)). If the promise is "vague, general or of indeterminate application," it is not enforceable. Aguilar v. Int'l Longshoremen's Union Local No. 10, 966 F.2d 443, 446 (9th Cir.1992).

Here, the Court agrees with InMode's contention that Rueckl has not alleged a promise that is clear and unambiguous in its terms. In his complaint, Rueckl only alleged he was promised a total of 10,000 stock options in return for his promotional and expert witness services. Rueckl did not indicate what type of shares, the grant and vesting dates, nor the strike price. In his response to InMode's Motion to Dismiss, Rueckl clarified that the strike price was $1.00. However, as to the other specificities, he only added that "each option was to be the same kind that InMode executives were to receive[.]"

The Court cannot enforce such a promise. Even if the Court would consider "each option was to be the same kind that InMode executives were to receive" to be an unambiguous term, Rueckl has not met his burden of specifying the executives' type of shares and their grant and vesting dates, nor did he claim that each executive, in fact, received identical stock options. Without greater specificity as to Rueckl's rights and InMode's obligations, the Court would have no rational basis upon which to assess damages. Accordingly, the Court finds that Rueckl has failed to sufficiently allege a claim for promissory estoppel. Because it is not certain that the deficiencies of the claim cannot be cured by amendment, the Court grants leave to amend this cause of action.

### 5. Negligent Misrepresentation (Claim 1) & Fraud (Claim 6)

To establish a claim for negligent misrepresentation, a plaintiff must allege: 1) a representation that is false; 2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; 3) the representation was for the guidance of others in their business transactions; 4) the representation was justifiably relied upon; 5) that such reliance resulted in pecuniary loss to the relying party; and 6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. G.K. Las Vegas Ltd. v. Simon Prop. Group, Inc., 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006). Negligent misrepresentation must be plead with particularity including allegations of the time, place, nature of the fraud, and specific parties involved. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

To establish a claim for fraud, a plaintiff must allege (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation. Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1386 (Nev. 1998). Additionally, like negligent misrepresentation, a plaintiff asserting a claim for fraud must also establish justifiable reliance. Collins v. Burns, 741 P.2d 819, 821 (Nev. 1987).

1    InMode argues that Rueckl's negligent misrepresentation and fraud claims against
2  InMode fail for lack of adequate pleading of justifiable reliance. InMode claims that Rueckl
3  should not have justifiably relied on Lodwig's misrepresentation because it is common
4  knowledge that stock options sales require terms indicating the type of shares and vesting and
5  redemption dates. Therefore, a highly educated individual like Rueckl could not have justifiably
6  relied stock option agreements missing these essential terms. Additionally, InMode claims that
7  given the clear requirements of N.R.S. 78.200, Rueckl could not have justifiably relied on an oral
8  agreement for stock options as compensation for his services. However, these assertions do not
9  warrant dismissal of these claims.

10   While a lack of justifiable reliance bars recovery in fraud and negligent misrepresentation
11 claims, "this principle does not impose a duty to investigate absent any facts to alert the
12 defrauded party his reliance is unreasonable." Collins, 741 P.2d at 821. "The test is whether the
13 recipient has information which would serve as a danger signal and a red light to any normal
14 person of his intelligence and experience." Id.

15   Rueckl adequately pled facts for justifiable reliance. Rueckl claims he inquired about the
16 need for written documentation and was assured that everything was handled. He claims he had
17 prior dealings with InMode and had no reason to suspect he could not rely on their
18 representations. Additionally, absent any authority, the Court will not resolve whether a
19 physician should have the pertinent knowledge of stock options transactions and the Nevada
20 statutes that regulate them. Accordingly, the Court finds that Rueckl adequately alleged negligent
21 misrepresentation and fraud.

22   **IV. Conclusion**
23   Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF No.
24 10) is **GRANTED in part and DENIED in part**;
25   IT IS FURTHER ORDERED that the motion to dismiss based on lack of personal
26 jurisdiction is **DENIED;**
27   IT IS FURTHER ORDERED that the motion to dismiss the breach of contract, breach of
28 the implied covenant of good faith and fair dealing, and promissory estoppel claims is

1 **GRANTED;**

2 IT IS FURTHER ORDERED that the motion to dismiss the claims for unjust enrichment,
3 negligent misrepresentation, and fraud is **DENIED;**

4 IT IS FURTHER ORDERED that Plaintiff's breach of contract and breach of the implied
5 covenant of good faith and fair dealing claims are **DISMISSED with prejudice**;

6 IT IS FURTHER ORDERED that Plaintiff may file an amended complaint containing the
7 claims that have not been dismissed and amending the claim for promissory estoppel within
8 fourteen (14) days of the entry of this order, failure to do so will result in final dismissal of the
9 promissory estoppel claim

10 IT IS FURTHER ORDERED that Plaintiff's Motion for Limited Jurisdictional Discovery
11 (ECF No. 38) is **DENIED as moot**;

12 IT IS FINALLY ORDERED that Plaintiff's Objections to the Magistrate Judge's Order
13 (ECF No. 37) is **DENIED as moot**.

14 Dated this 27th day of July, 2020.

Kent J. Dawson
United States District Judge